# Miller *versus* Irwin.

1. The taint of usury cannot be eradicated by the substitution of one security, or one set of securities, for another, so long as the original debt survives.
2. In a suit upon a note the defendant, in her affidavit of defence, averred that the loan for which the note was given had been carried by her father for two years, at ten per cent interest, and that the note signed by her was the renewal of one which was the last of a series given by him. The court below entered judgment for the amount of the note, and only abated the excess of interest for the four months which defendant's note had to run. *Held* (reversing the court below), that she had the right to set up also the excess of interest paid by her father against the plaintiff's claim.

October 31st 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1877, No. 33.

Assumpsit by John Irwin, Jr., president in trust for the United Savings Bank, on a stock note drawn by Mary A. Miller, on May 20th 1876, at four months, for $2949.32, and payable to the order of the cashier of said bank.

Defendant filed an affidavit of defence, in which she averred, inter

[Miller *v.* Irwin.]

alia: That the note upon which this suit was brought is not the individual note, or given for the individual debt of said defendant, but that the same was a renewal of a note similar thereto given by David Davis, deceased, the father of the defendant, and whose executrix she is, and that the same is a debt of the estate of said David Davis, deceased, and not the individual debt of said Mary A. Miller; that at the time of making said note by said decedent there was delivered to the said plaintiff (as appears from the contract, a copy of which is filed by the said plaintiff, and which was also made part of defendant's affidavit), fifty shares of the capital stock of the United Savings Bank of Pittsburgh, as collateral security for the payment of the same, which said shares of stock were, according to the contract, to be sold in default of the payment of said note at maturity, and the proceeds thereof applied to the payment of said note, and should any deficiency then remain unpaid said signer was to be liable for the deficiency; that at the time of delivery of said note the said shares of stock were of far greater value than the amount of said debt, to wit: of the par value of $5000, and the said plaintiff below still holds the same, as it does not appear from any allegation by the said plaintiff that the said stock has been sold as required by said contract. Defendant believes that she is not legally liable on said note, as said plaintiff has failed to comply with the terms thereof, and at all events she would only be liable for the deficiency, if any there be, after the sale of the stock left as collateral and application of proceeds to the payment of said note, and defendant below claimed credit therefor, which she also claimed in case said stock, or any part thereof, be sold."

In a supplemental affidavit she further averred, that "she was induced and directed to make and sign said note by the officers of said bank, with the distinct and positive assurance that it was only as executrix of said estate that she signed it; that the said plaintiff charged and she paid out of said decedent's estate nine per cent. interest thereon; that said loan has been carried along for two years by said decedent at ten per cent. interest; that affiant claims, by way of defence, a set-off for all such usurious interest so paid by her."

The plaintiff took out a rule to show cause why judgment should not be entered for want of a sufficient affidavit of defence, and, after hearing, the court made the rule absolute, and entered judgment for the amount of the note, less the excess of interest, for the time the note had to run, calculating the interest paid at the rate of nine per cent. per annum.

The defendant took this writ, alleging that the court erred in not allowing defendant a set-off for all the excess of interest paid on the whole series of notes of which the note in suit was the last renewal.

[Miller *v.* Irwin.]

*S. B. W. Gill* and *T. Walter Day*, for plaintiff in error.—The question of usury was a question of fact for the jury, both as to the amount of per cent., and the length of time the usury had been taken, and the court had no authority to enter a judgment striking off the excess of interest for the time, merely, that the note in suit had to run.

In point of fact, and as the affidavit of defence set forth, the note was a renewal of other notes, and the whole series of notes was one transaction, and the defendant was entitled to a credit for the whole amount of the excess of interest paid during said continuance and renewal of the note: Overholt *v.* The First National Bank of Mt. Pleasant, 1 Norris 690.

*Hill Burgwin*, for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 7th 1878.

In the supplemental affidavit of defence, it was alleged in specific terms that the loan for the amount of which the note in suit was given, had been carried along by David Davis, the father of the defendant, for two years, at ten per cent. interest. The note signed by her was the renewal of one which appears to have been the last of a series given by the father for the purchase-money of stock of The United Savings Bank. The whole series of notes applied to and secured the same debt. The cases collected in Campbell *v.* Sloan, 12 P. F. Smith 481, unite in deciding with unmistakable emphasis that the taint of usury cannot be eradicated by the substitution of one security or one set of securities for another, so long as the original debt survives. The excess of interest for four months only was abated at the entry of the judgment. The defendant had the right to set up the excess of interest paid by her father against the plaintiff's claim.

Suggestions are contained in the affidavits which were urged on the argument as amounting to allegations of fraud in the procurement of the defendant's signature to the note. While the use of indirect means by the officers of the bank may be understood to be charged, the facts are stated so vaguely that it would be premature now to discuss any questions to which they may possibly give rise. These questions can be developed in a trial in the Common Pleas, for the purposes of which the record is sent back.

Judgment reversed, and a *procedendo* awarded.